Wright, J.,
delivered the opinion of the Court.
On the 1st of September, 1887,' John C. McLemore executed to William M. Gwinn, a deed of trust upon the one undivided moiety of two tracts of land entered in the name cf Charles J. Love, situated in the county of Dyer, and State of Tennessee.
One of these tracts contained 5000 and the other 1700 acres, and the deed of trust recited that the other moiety belonged to Charles J. Love.
On the 10th of November, 1837, this deed of trust was registered in Dyer county, and purports to have been executed to secure pre-existing debts, due from McLemore to Gwinn.
On the 29th of' November,' 1847, Gwinn assigned to complainant, William S. Williams, the claim he so held upon McLemore, with the trust, to secure its payment.
These lands had been located by W. B. Jones, who *82 was employed by Charles J. Love and McLemore for that purpose; and by a decree of this Court, rendered the 19th of February, 1846, one Woodfolk, as the as-signee of Jones, recovered jointly against Samuel T. Love, as the executor of Charles J. Love, and also against said McLemore, the sum of $2,083.60, with interest from the. 1st of January, 1846, as compensation to the locator, Jones, for locating said two tracts of land, and for other small amounts against them; and one-third of the costs of that suit — the whole of which Charles J. Love’s executor paid — McLemore being unable to pay any part of it.
It further appears that Samuel T. Love, as the executor of Charles J. Love, on the 4th of March, 1848, obtained a decree in the Chancery Court at Franklin against John C. McLemore, for $3,867, upon which executions have been run, and returned no property found.
McLemore and Charles J. Love had been partners in the purchase and location of land warrants; and this last recovery grew out of matters pertaining to the partnership.
The amount due Charles J. Love’s estate by McLe-more, on account of these two recoveries, on the 22d of May, 1856, was $8,778.98, and the same remains unpaid.
Gwinn and Charles J. Love had been partners in the manufacture of iron; and the latter having died in July, 1837, a bill was filed on the 1st of September, of that year, by Samuel T. Love, as the executor of Charles J. Love, against Gwinn, for a settlement of the partnership; and on the 13th of June, 1851, a decree *83 was had in his favor against Gwinn, for $30,994.00, and this also remains unsatisfied.
Charles J. Love, in his lifetime, had made a covenant with McLemore, to convey him the one undivided half of the 1700 acres, and had also made him a transfer of the one undivided half of the 5000 acres, upon a copy of the entry; but it was agreed between them that the grants should issue in Love’s name.
The grants did, accordingly, issue to Charles J. Love, and the legal title to said lands stand now in the heirs and devisees of said Charles J. Love.
It is to be inferred from the record in this cause, that the two tracts of land afordsaid, belonged to the partnership lands of McLemore and Charles J. Love.
On the 3d of September, 1847, Samnel T. Love, as the executor of Charles J. Love, together with his heirs and devisees, filed a bill against McLemore, seeking to subject his interest in the said two tracts of land to the payment of his half of the Woodfolk decree, and, also, to the decree of the 4th of March, 1843, charging that they had a lien upon his interest in said lands.
On the 12th of April, 1849, William S. Williams filed his bill against Charles J. Love’s executor, and heirs, and devisees, and, also, against McLemore and Gwinn, upon the mortgage debt assigned to him by Gwinn, claiming priority out of said McLemore’s interest in said lands, and asking for an injunction against Charles J. Love’s executor, heirs and devisees, and that the legal title of one-half of said lands be divested out of them, and sold to pay his debt.
The executor, and heirs, and devisees of Charles J. Love, insist that before they shall be compelled to part *84 with the legal title to said McLemore’s moiety of said lands, the debt due them from him, as well as the debt due from Gwinn, must first be paid.
And the question is, whether their rights and equities are not superior to the equity of Williams ?
We think if it were necessary, it might fairly be deduced from this record, that the whole indebtedness of McLemore to Charles J. Love, arose out of transactions connected with their partnership in land warrants and lands, of which these two tracts were a part. If so, Charles J. Love, at his death, for the purpose of producing equality between them, had an equity against McLemore, which fastened itself upon his interest in these lands, and of which he could not be deprived by McLemore or any creditor of his, or purchaser from him with notice. A forteori would this be so as to Mc-Lemore’s half of that part of the decree in favor of Woodfolk, which was given as compensation for the location of these very lands. Sweat et al. v. Henson, 5. Hum. 49; Gee v. Gee, 2 Sneed, 395.
And it can make no difference that at Love’s death the amount of inequality between them had not been ascertained by a decree; and that the claim of the locator existed in the form of a joint lialility which was not satisfied by the heirs and representatives of Charles J. Love until long afterwards.
They nevertheless arose from transactions occurring in the lifetime of Love, and the equity existed at that time.
But if we were to assume that the indebtedness to Charles J. Love by McLemore, and his liability for him to Jones or Woodfolk arose from independent transac *85 tions, unconnected with these lands, or with the partnership, he could not have forced him to a conveyance of his half of these lands, without paying his indebtedness to him, and freeing him from liability for him.
And the same rights, precisely, nxist in favor oi the executor, and heirs, and devisees of Charles J. Love. They have the legal title to these lands, and cannot be forced to part with it until the debt due from McLe-more is paid.
And the same rule applies to Gwinn. If he had filed the bill he could not compel a' sale by the executor, heirs and devisees of Love, who had the legal title until he would do equity by paying not only the debt due from McLemore, but also the debt due from himself to Love’s estate, which has been ascertained by the decree aforesaid.
The transactions between Charles J. Love and Gwinn also occurred previous to July, 1837, the time of the death of the former, or the debt arose from transactions occurring prior to that time.
Gwinn, as we shall see, took his mortgage incumbered with the equity existing against McLemore; and in his hands it became subjected to an additional equity against him, because of his indebtedness to Love’s estate, and the equity of the estate being at least equal to that of McLemore or Gwinn, and the executor, heirs and devisees of Love having the legal title in these lands, must, in a Court of Chancery, prevail. Turner v. Pettigrew et al., 6 Hum. 438, 440; Sweat et als. v. Henson, 5 Hum. 49, 50; 10 Yer. 105.
Williams, in this case, is in no better situation than *86 Gwinn, and Gwinn in no better condition than McLe-more.
There is no rale in equity better settled than this, that a purchaser of an equitable title must always abide by the case of the person from whom he buys. Craig v. Leiper et al., 2 Yerg., 193.
The questions involved in this cause were decided by this Court in the late unreported case of Johnston, Trustee, v. Napier et al.
M. C. Napier was, in equity, entitled to certain lands, which had been entered and granted in the name of Thompson. The former sold these lands, with others, to E. N. Napier upon time, and bound himself to mate a title. He made an assignment for the benefit of his creditors, by which Johnston, as trustee, became entitled to the debt for the purchase money of the land due from E. N. Napier. When Thompson was called on by M. C. Napier, or Johnston, his trustee, to convey, so that the title to E. N. Napier might be completed, he refused, unless M. C. Napier would indemnify him for his liabilities as surety and endorser, and also, pay him a debt due from M. C. Napier.
This Court decided he could not be compelled to convey unless indemnified and his debt paid.
Decree affirmed.